COURT OF APPEALS
DECISION
DATED AND FILED

October 14, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2024AP803-CR**

Cir. Ct. No.  2020CF2724

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

        PLAINTIFF-RESPONDENT,

    V.

RONALD LAMONE SATCHELL,

        DEFENDANT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Milwaukee County:  MILTON L. CHILDS, SR., Judge.  *Affirmed*.

        Before Colón, P.J., Donald, and Geenen, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

        ¶1      PER CURIAM.   A jury found Ronald Lamone Satchell guilty of six charges, including attempted first-degree intentional homicide with use of a

dangerous weapon, for shooting his former romantic partner, Nellie.[1] Satchell appeals from the judgment of conviction and from an order of the circuit court denying his motion for postconviction relief. He argues that trial counsel was ineffective for agreeing to allow the circuit court to tell the jury, in response to a jury question, that Satchell had no alibi. For the following reasons, we affirm.

## BACKGROUND

¶2 Satchell and Nellie were romantic partners for approximately three years. Their relationship ended and Nellie became romantically involved with someone else. On July 29, 2020, as Nellie drove her car out of the garage attached to her condo, with her boyfriend in the passenger seat, she heard the front passenger window shatter. Nellie turned toward the sound and saw Satchell squatting by her garbage cans pointing a gun at her car. The garbage cans were alongside the driveway, which was well lit by the overhead lights on all the condos in the condo complex. Nellie felt a pain in her chest and knew she had been shot. Panicked, she sped away and called 911 before eventually pulling over and waiting for law enforcement. She had been shot three times. Police arrived to Nellie's location before the ambulance, and an officer asked Nellie who shot her while his body-worn camera was recording. Nellie responded, "Ronald Satchell." Later, when police presented Nellie with a photograph of Satchell, Nellie confirmed that the photograph depicted Satchell and that Satchell shot her.

---

[1] We use the pseudonym "Nellie" to refer to the victim in this case. *See* WIS. STAT. RULE 809.86 (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

¶3    Nellie also told police that Satchell had sent her threatening messages on Facebook, and she provided them to investigators.[2]  Satchell sent numerous messages inquiring about Nellie's new boyfriend and implied that he was going to fight him.  Satchell referred to his gun possession in other messages and sent Nellie a video of himself holding a gun.  He also sent Nellie messages to tell her that he was in her neighborhood and then made comments about Nellie's home as if he was observing it.

¶4    Police tracked Satchell to a residence and executed a warrant.  Satchell was found hiding in the basement behind a small indentation in a wall.  He was arrested and charged with one count each of: first-degree reckless injury with use of a dangerous weapon; first-degree recklessly endangering safety; possession of a firearm by a felon; felony bail jumping; misdemeanor bail jumping; and attempted first-degree intentional homicide with use of a dangerous weapon.  Three of the counts additionally included domestic abuse assessments.

¶5    Satchell proceeded to a jury trial.[3]  At trial, Nellie testified consistently with the foregoing facts and adamantly maintained that Satchell was her shooter.  Screenshots of Nellie's messages with Satchell were admitted into evidence.  Although the screenshots lacked dates, Nellie testified that she received these messages "a day or two" before the shooting.

---

[2]  The name on the Facebook account that sent the messages was "Tyler Cook," but Nellie testified that it belonged to Satchell and verified that the "Tyler Cook" account sent her a photo of Satchell.  Nellie also addressed the account as "Ronald Satchell" in her messages.

[3] This case was tried together with Milwaukee County Circuit Court Case No. 2019CM2391, in which Satchell was tried for crimes related to an assault against Nellie at a hotel.  This appeal does not concern Case No. 2019CM2391, and further facts related to that case are excluded from this opinion.

¶6 During deliberations, the jury sent the circuit court several questions at once. Relevant to this appeal, the jury asked, "Are there dates on the messages?" and "does [Satchell] have an alibi?" Though the parties agreed that the Facebook messages did not have dates and that Satchell did not have an alibi, they disagreed on how to answer the questions.

¶7 The circuit court originally suggested responding "no" to the Facebook message date question, but responding to the alibi question with an instruction that the jury is to "rely on the evidence that was presented at trial." The State, in opposition, suggested instead that the alibi question be answered with a clear "no" or a reminder not to speculate and to rely on the trial evidence. Trial counsel opposed the State's suggestion, emphasizing that the court should not "interfere [in] their deliberations" and should advise the jury to "rely on the evidence" without referencing speculation. Counsel did not want to risk affecting the deliberations by emphasizing one jury instruction over another in answering the jury's question.

¶8 The circuit court then proposed responding "no" to the Facebook message question and "solely rely on the evidence presented at trial" to the alibi question. Trial counsel supported this proposal because telling the jury that the Facebook messages had no dates was simply stating a fact. The State opposed this resolution, arguing that it was also a fact that Satchell had no alibi, and the circuit court must be consistent in answering both questions.

¶9 Trial counsel agreed to inform the jury that Satchell had no alibi if the State agreed to inform the jury that the Facebook messages had no dates. After this discussion, the circuit court answered the Facebook message date question, "There are no dates on the messages," and it answered the alibi question, "There is no alibi."

4

Each answer was followed by an admonishment to "solely rely on the evidence presented at trial" and "to re-read the jury instructions for direction."

¶10    The jury found Satchell guilty on all counts.  The circuit court sentenced Satchell to an aggregate prison term of 31 years, bifurcated into 16 and one-half years of initial confinement and 14 and one-half years of extended supervision.

¶11    Satchell filed a motion for postconviction relief, claiming that trial counsel was ineffective for agreeing to confirm to the jury that he had no alibi in answer to the jury's question.  The circuit court held a *Machner*[4] hearing three years after Satchell's trial.

¶12    Trial counsel testified but had difficulty recalling specifics.  She stated that the transcript from trial would be the best guide to her thought process at the time, but as a general matter, she would have considered the legal ramifications of the answer and whether it would have shifted the burden of proof.  An important consideration was the truth of the statement—Satchell had no alibi and never suggested that he had one.  Counsel vaguely recalled that the answer was part of a "trade off" with the State in answering the jury's Facebook message question.  She agreed with the State's proposition that the trade off favored the defense.  While it was clear from the record that Satchell had no alibi, Nellie had testified that the Facebook messages predated the shooting by just "a day or two."  The circuit court's response, therefore, limited the effect of Nellie's testimony.

¶13    The circuit court denied Satchell's ineffectiveness claim.  It found trial counsel credible and accepted her reliance on what she stated at trial.  The circuit

---

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

5

court concluded that trial counsel did not perform deficiently. The transcript revealed that trial counsel provided input in crafting the responses to the jury's questions and emphasized that the court should not interfere with the jury's deliberations. The court further concluded that Satchell did not prove prejudice because it was undisputed that Satchell had no alibi, and the jury would have reached the same result even if instructed only to rely on the evidence presented at trial.

¶14    Satchell appeals.

## DISCUSSION

¶15    Satchell argues that trial counsel was ineffective for agreeing to allow the circuit court to tell the jury, in response to its question, that Satchell had no alibi. "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. We uphold the circuit court's factual findings unless they are clearly erroneous. *State v. Mull*, 2023 WI 26, ¶31, 406 Wis. 2d 491, 987 N.W.2d 707. Whether the defendant carried their burden to establish ineffective assistance is an issue of law that we review independently. *Id.*

¶16    To establish ineffective assistance of counsel, the defendant must prove both that counsel's performance was deficient and that such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant fails to satisfy one prong of *Strickland*'s two-prong test, we need not consider the other. *State v. Savage*, 2020 WI 93, ¶25, 395 Wis. 2d 1, 951 N.W.2d 838.

¶17 "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." *State v. Ruffin*, 2022 WI 34, ¶30, 401 Wis. 2d 619, 974 N.W.2d 432. Strategic trial decisions rationally based on the facts and the law do not constitute deficient performance. *State v. Hunt*, 2014 WI 102, ¶55, 360 Wis. 2d 576, 851 N.W.2d 434. A reviewing court "should be highly deferential to counsel's strategic decisions and make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (cleaned up). We are not to "second-guess a reasonable trial strategy, unless it was based on an irrational trial tactic or based upon caprice rather than upon judgment." *Id.* (cleaned up).

¶18 To prove prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Carter*, 2010 WI 40, ¶37, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting *Strickland*, 466 U.S. at 694). This inquiry turns on the totality of the circumstances. *State v. Johnson*, 153 Wis. 2d 121, 129-130, 449 N.W.2d 845 (1990).

¶19 Satchell makes seven arguments in support of his claim that trial counsel performed deficiently by allowing the circuit court to tell the jury he had no alibi in response to the jury's question. In Satchell's first two arguments, based exclusively on Ohio law, Satchell claims that trial counsel's performance infringed on his Fifth Amendment rights and shifted the burden of proof from the State to Satchell. The Ohio cases highlighted by Satchell are not binding on Wisconsin

courts,[5] and importantly, Satchell concedes that there is no settled law on this issue in Wisconsin. "When the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance." *State v. Jackson*, 2011 WI App 63, ¶10, 333 Wis. 2d 665, 799 N.W.2d 461; *see also State v. Morales-Pedrosa*, 2016 WI App 38, ¶26, 369 Wis. 2d 75, 879 N.W.2d 772 (referring to the clarity of "Wisconsin law" for this determination). Trial counsel did not perform deficiently by allowing the circuit court to respond to the jury's alibi question in the way that it did where the Fifth Amendment and burden of proof issues related to that response were novel and unsettled.

¶20 Next, Satchell argues that the circuit court's response is inconsistent with the spirit of WIS. STAT. § 971.23(8)(a), which prohibits the State from commenting on an abandoned alibi defense. We reject this argument. This case does not involve the State commenting on Satchell's lack of alibi or the withdrawal of an alibi. Instead, the jury raised the alibi question, and the circuit court, not the prosecutor, answered the jury's question with a response negotiated by the State and trial counsel. The statute does not address or apply to this situation.

¶21 Satchell argues that the circuit court's alibi answer introduced irrelevant evidence into the record and was ambiguous because it did not include the legal definition of "alibi." We do not agree. The circuit court's answer to the jury's question was not evidence, the jury instructions (which the court directed the jury to re-read) make clear that the court's answer was not evidence, and jurors are

---

[5] Additionally, we observe that the Ohio cases cited in Satchell's brief are inapplicable here. In those cases, *the prosecutor* made remarks that arguably commented on the defendant's decision not to testify or lack of alibi evidence. *See State v. Anderson*, 944 N.E.2d 1224, 1226-27 (Ohio Ct. App. 2010); *State v. Smith*, 720 N.E. 2d 149, 153 (Ohio Ct. App. 1998). Here, it was the circuit court that told the jury, in response to the jury's question, that "[t]here is no alibi," and this response was the result of extensive negotiations between the State and trial counsel.

presumed to follow instructions. *State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158. The circuit court's responses confirmed facts that both parties conceded were facts. And, there is no indication that anyone was confused about what the jury meant by "alibi" or that the circuit court's response to the alibi question was ambiguous. The jury's question did not refer to Wisconsin law, and it was reasonable for trial counsel to presume, as did the State and circuit court, that the jury relied on the commonly understood definition of "alibi."[6]

¶22    Satchell's remaining arguments are related to one another and can be resolved together. Satchell claims that trial counsel needlessly objected to the circuit court's proposed answer (i.e., instruct the jury to rely solely on the evidence presented at trial without directly answering the alibi question), and the trade off reached by trial counsel (i.e., agreeing to a response that confirmed that Satchell had no alibi in exchange for confirming that Facebook messages presented at trial had no dates) was unwise and ineffective.

¶23    Although the *Machner* hearing occurred approximately three years after the trial, trial counsel remembered that the circuit court's response to the jury's alibi question was the result of a "trade off" that she believed was favorable to the defense. Trial counsel recalled that there was no evidence presented at trial that Satchell was elsewhere when Nellie was shot, but it was debatable on what date the Facebook messages were sent. The State objected to the court's proposed response insofar as the court was going to affirmatively tell the jury that the Facebook messages had no dates while not directly answering the alibi question. In the face of that objection, trial counsel made the reasonable decision to prioritize telling the

---

[6] A common dictionary definition of "alibi" is "the plea of having been at the time of the commission of an act elsewhere than at the place of commission." *Alibi*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/alibi (last accessed October 8, 2025).

jury that the Facebook messages lacked dates (an ambiguity, if it was one, resolved in favor of Satchell) by agreeing to also tell the jury the undisputed fact that Satchell had no alibi. Trial counsel's decision was not "an irrational trial tactic" under the totality of the circumstances, and his disagreement with that decision in hindsight does not establish deficient performance. *Breitzman*, 378 Wis. 2d 431, ¶65. Having concluded that Satchell did not demonstrate deficient performance, we need not and do not discuss the issue of prejudice. *Savage*, 395 Wis. 2d 1, ¶25.

## CONCLUSION

¶24 For the foregoing reasons, we conclude that Satchell's trial counsel was not ineffective for agreeing to allow the circuit court to tell the jury, in response to a jury question, that Satchell had no alibi. The circuit court's credibility finding that trial counsel strategically chose to confirm that Satchell had no alibi in exchange for confirming that the Facebook messages lacked dates was not clearly erroneous, and trial counsel's strategy was not irrational under the totality of the circumstances.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.