# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 18, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP954-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF594

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

GARRY LEE HUGHES,

      DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: DAVID A. FEISS, Judge. *Affirmed.*

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Gary Lee Hughes, pro se, appeals from an order of the circuit court denying his postconviction motion.  Hughes argues that the circuit court erred by denying his motion without a holding a hearing and that his trial counsel was ineffective.  For the following reasons, we affirm.

## BACKGROUND

¶2     In 2016, Adam[1] was driving in Milwaukee when a vehicle, later determined to be driven by Hughes, nearly hit him.  As both vehicles approached a red light, Hughes pulled up beside Adam where they exchanged words before Hughes fired multiple shots at Adam and drove off.

¶3     Hughes was charged with and pled not guilty to a total of four counts, all with habitual criminality enhancements: endangering safety by use of a dangerous weapon contrary to WIS. STAT. § 941.20(3)(a)1., first degree recklessly endangering safety while using a dangerous weapon contrary to WIS. STAT. § 941.30(1), possession of a firearm by a felon contrary to WIS. STAT. § 941.29(1m)(a), and possession of a firearm by an adjudicated delinquent contrary to § 941.29(1m)(bm).

¶4     The case proceeded to a jury trial held over six days.[2]  At trial, the State presented cell tower records placing Hughes in the area of the shooting, jail phone calls made by Hughes, and a forensic analysis of the firearm.  Furthermore,

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we use the pseudonym "Adam" to refer to the victim.  All references to the Wisconsin Statutes are to the 2023-24 version.

[2] The Honorable Frederick C. Rosa presided over the trial, the Honorable T. Christopher Dee presided over the sentencing, and the Honorable David A. Feiss decided the postconviction motion.  For ease of reference, we refer to all three judges as the circuit court.

Adam testified that the man who shot at him was a "Black man," "[l]ight skinned, redhead dreadhead, tattoos on his face," and then identified Hughes in court as the shooter.

¶5 The State also presented limited testimony from the detective who administered the photo array to Adam from which Adam identified Hughes as the shooter. During the detective's testimony, Hughes' trial counsel requested a side bar and objected to allowing the detective to testify that Adam chose Hughes in the photo array. Counsel argued that the detective's testimony about the array was hearsay since Adam was not previously questioned about the photo array and no other evidence, like a signed photo or form indicating Adam had completed the photo array, was presented to the jury. The circuit court agreed and allowed the detective to testify generally about the photo array procedure, that Adam was shown a photo of a specific suspect, and that he selected a photo, but not which photo Adam selected.

¶6 Additionally, DNA evidence recovered from multiple parts of the firearm was presented at trial. The forensic scientist who performed the DNA analysis testified that at least three individuals' DNA was on the weapon and that she was unable to determine whether Hughes' DNA was present because some samples were not suitable for DNA comparison. She was able to exclude Hughes as the source of the major DNA profile on the firearm, but not from the minor profiles that lacked the amount of genetic information necessary for testing.

¶7 The jury found Hughes guilty as charged. The circuit court sentenced Hughes to three consecutive sentences totaling 24 years, bifurcated into 16 years of initial confinement and 8 years of extended supervision, and a 4-year sentence to be served concurrently.

¶8      Hughes, pro se, moved for postconviction relief arguing that there was insufficient evidence to convict him and that his trial counsel was ineffective. In a written decision, the court found that the evidence the State presented through "testimony ranging from eyewitness accounts, identification evidence, firearm and toolmark evidence, and cell tower records establishing the defendant's location" in relation to the victim, Adam, was sufficient to support the jury's verdicts.

¶9      The circuit court also rejected Hughes' claims that trial counsel was ineffective for failing to introduce evidence that his DNA was excluded as a match for the DNA on the firearm and for failing to object to the detective's testimony about the photo array.  The court explained that the DNA evidence was introduced at trial and Hughes' argument was based on a mistaken belief that the DNA report exonerated him when it did not.  Similarly, the court found that Hughes' photo array misidentification argument "rest[ed] on a complete misunderstanding of the way in which photo arrays are conducted."  The court then denied Hughes' motion without a hearing.

¶10     Hughes appeals.

## DISCUSSION

¶11     On appeal Hughes argues the circuit court erred by not holding a hearing on his postconviction motion.  We disagree, and we conclude that the circuit court properly denied Hughes' motion.

¶12     In reviewing Hughes' postconviction motion, we must first "determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432.  The circuit court has the discretion to grant or

4

deny a hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief[.]" ***State v. Allen***, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. We review the circuit court's grant or denial of a hearing for an erroneous exercise of discretion. ***Id.***

¶13 In his postconviction motion, Hughes argues his trial counsel was ineffective for failing to challenge the photo array law enforcement showed to the victim, Adam, and failing to challenge the DNA evidence recovered from the firearm.[3] We conclude that the circuit court properly denied Hughes' motion without a hearing because the record conclusively demonstrates that Hughes cannot show that his counsel was ineffective.

¶14 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." ***State v. Balliette***, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must establish two elements to demonstrate that he received ineffective assistance of counsel: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). If the defendant fails to establish one element, we need not address the other. ***Id.*** at 697.

---

[3] Hughes raised several other arguments in his postconviction motion before the circuit court that he did not renew on appeal, including that trial counsel was ineffective for failing to move to suppress the firearm, for failing to impeach Adam, and for failing to object to the joinder for trial of this case with another case in which Hughes was ultimately acquitted of all charges. We deem those arguments abandoned and do not address them further. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

¶15    "Whether counsel was ineffective is a mixed question of fact and law." ***Balliette***, 336 Wis. 2d 358, ¶19.  We will not disturb the circuit court's factual findings unless they are clearly erroneous and we independently review the legal question of whether there was ineffective assistance of counsel. ***Id.***

¶16    First, Hughes argues that his attorney should have challenged the photo array the police administered to Adam because it was suggestive, unreliable, and ultimately allowed the police, instead of Adam, to identify Hughes as the perpetrator.  Although Hughes states the photo array was suggestive, Hughes does not identify any aspects of the photo array that were suggestive and nothing in the record indicates that it was. *See **State v. Mosley***, 102 Wis. 2d 636, 652, 307 N.W.2d 200 (1981) ("Suggestiveness in photographic arrays may arise in several ways[:] the manner in which the photos are presented or displayed, the words or actions of the law enforcement official overseeing the viewing, or some aspect of the photographs themselves.").

¶17    Instead, Hughes argues that there was no separate form of verification that Adam chose Hughes' photo in the photo array which allowed the detective to swap which photo Adam picked without Adam's input.  We disagree.

¶18    Hughes focuses on the fact that the folder and photo numbers were different and that Adam identified which folder contained Hughes' photo.  As the circuit court explained, Hughes' "entire argument about the photo array/identification evidence rests on a complete misunderstanding of the way in which photo arrays are conducted."  Photos are not shown to witnesses in the order of their number, but are instead placed in separately numbered folders and shuffled.  The limited information concerning the photo array in the record does not support that any identification error occurred, so Hughes cannot show that trial

counsel was deficient.  *See* ***State v. Counihan***, 2020 WI 12, ¶51 n.15, 390 Wis. 2d 172, 938 N.W.2d 530 ("The failure to raise a meritless objection does not constitute deficient performance.").

¶19     Regardless, even if we assume there was an error in the photo array identification process, there is no support in the record for Hughes' speculation that the detective lied about which photo Adam picked.  Furthermore, Adam gave a detailed description of the man who shot at him and identified that man as Hughes in court which further supports that even if the alleged error occurred it did not result in any prejudice to Hughes.

¶20     Next, Hughes argues on appeal that the prosecutor improperly commented on the DNA evidence in his closing statement by telling the jury that the DNA analyst "couldn't say that [Hughes'] DNA was on the gun" because "[t]here's at least two more people who touched that gun.  She just didn't have enough human DNA, enough cells to make any comparison."

¶21     The State argues that Hughes forfeited this argument by failing to raise it before the circuit court.  We agree that Hughes failed to preserve this argument.  "Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal."  ***State v. Huebner***, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727.  However, we also observe that Hughes' claim fails because it appears to be based on a misunderstanding of the DNA analyst's testimony and the DNA report.

¶22     While testifying, the DNA analyst agreed that she was unable to determine with certainty whether Hughes' DNA was on the firearm because only one of the samples recovered was suitable for DNA comparison and there were other samples that contained other individuals' DNA.  It was not improper for the

prosecutor to highlight for the jury that the DNA evidence presented did not rule out whether Hughes' DNA was on the firearm. *See **State v. Mayo***, 2007 WI 78, ¶43, 301 Wis. 2d 642, 734 N.W.2d 115 ("[A] prosecutor may comment on the evidence, argue to a conclusion from the evidence, and may state that the evidence convinces him or her and should convince the jury.") Therefore, Hughes' trial counsel was not deficient for failing to make a meritless objection to the prosecutor's statement. *See **Counihan***, 390 Wis. 2d 172, ¶51 n.15.

¶23 Finally, Hughes contends that due to the errors he alleged concerning the photo array and the prosecutor's statement on the DNA evidence there was insufficient evidence to convict him so trial counsel was ineffective for failing to object to the sufficiency of the evidence and that these cumulative errors were prejudicial to Hughes and warrant relief. These arguments are premised on the success of Hughes' prior arguments that we rejected above, and therefore, they also fail. *See **id.***

## CONCLUSION

¶24 We conclude that the record conclusively demonstrates that Hughes is not entitled to relief, therefore the circuit court did not err by denying his postconviction motion without a hearing. Accordingly, we affirm

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.